UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S. DAVIS,<br><br>   Plaintiff,<br><br> v.<br><br>C. CARLTON, et al.,<br><br>   Defendants. | No. 2:11-cv-01100-TLN-KJN P<br><br><br><br>ORDER |

I. Prior Dismissal Vacated

  Plaintiff is a former state prisoner who proceeds with this civil rights action filed pursuant to 42 U.S.C. § 1983. On July 26, 2011, this court recommended that this case be dismissed without prejudice due to plaintiff's failure to appraise the court of his current address, and to file an amended application to proceed in forma pauperis on the form used in nonprisoner cases. (ECF No. 6.) Plaintiff thereafter informed the court of his new address (ECF Nos. 7, 9), filed objections to the findings and recommendations, and filed an amended application to proceed in forma pauperis. (See ECF Nos. 10, 11.) Plaintiff states, under penalty of perjury, that he timely hand-delivered his change of address to the court, but thereafter failed to receive any court orders at that address.

  For good cause shown, the court vacates the recommended dismissal of this action.

////

II. In Forma Pauperis Application Granted

The court next addresses plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff, who is no longer incarcerated, has submitted the affidavit required by Section 1915(a), showing that he is unable to prepay fees and costs or give security therefor. Accordingly, plaintiff's request to proceed in forma pauperis is granted.

III. Screening of Complaint

A. Legal Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations

sufficient "to raise a right to relief above the speculative level." Id.  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, id., and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

### B.  Plaintiff's Complaint

The complaint initially alleges that plaintiff has chronic medical problems involving his back and bladder and, more recently, his neck and shoulder.  The complaint makes the following factual allegations, summarized here:

1.  On July 6, 2009, Placer County Sheriff's Deputies picked up plaintiff from California State Prison-Sacramento ("CSP-SAC"), and transported him to the Placer County Jail.   Plaintiff was released from CSP-SAC with a cane; however, the cane was taken from plaintiff when he was booked into the Placer County Jail.

2.  When his cane was taken by Placer County Jail officials, plaintiff asked to be examined by the jail physician, Dr. David Duncan, who had previously treated plaintiff.  (Id. at 3, 15.)  Plaintiff informed jail officials that, pursuant to state statute, he was required to be examined by a physician within 24 hours after officials took his medical device.  See Cal. Penal Code § 2656 (detainee deprived of prescribed orthopedic appliance must be examined by a physician within 24 hours).

3.  On July 9, 2009, three days after his arrival at Placer County Jail, plaintiff was examined by Dr. Duncan, who informed plaintiff that he was not permitted to have a cane at the jail.  Plaintiff states that Dr. Duncan usually worked as an emergency room doctor at Auburn Mercy Faith Hospital, but also provided medical services to the jail as an employee of the California Forensic Medical Group Incorporated (CFMG).  Plaintiff alleges that, despite his requests to Dr. Duncan and Sergeant Nielsen (both are named defendants herein, as is CFMG),

1  plaintiff was not provided with "the form" identified in Penal Section 2656, to request the return
2  of his cane. See Cal. Penal Code § 2656(b), (c) (if a facility denies a detainee's written petition
3  requesting the return of a medical appliance, then, within two judicial days thereafter, the person
4  in charge of the facility is required to file the petition in the superior court).

5      4.  Plaintiff alleges that, later the same month, on July 24, 2009, after he demonstrated to
6  Nurse Mary and Deputy Carlton that he had swallowed his medication, Deputy Carlton (a named
7  defendant herein) ordered plaintiff, three times, to repeat the "open mouth" procedure. Deputy
8  Carlton then allegedly told plaintiff to "spit them out," to which plaintiff responded, "What do
9  you want me to do, regurgitate them?" (ECF No. 1 at 4.) When other prisoners laughed, Carlton
10 allegedly slammed plaintiff to the ground, then knelt down hard on plaintiff's "low back and left
11 buttock" while pushing plaintiff's left wrist down, despite plaintiff "screaming in pain telling him,
12 'I need spinal surgery, get off me!'" (Id. at 5.) Carlton then allegedly pulled plaintiff's right
13 wrist and arm behind plaintiff's back, causing a "loud pop and crunching noise," then cuffed
14 plaintiff's right wrist and radioed for back up. (Id.) Plaintiff alleges that this incident resulted in
15 injuries to his back, right shoulder and neck.

16     5.  Deputies Byers, Roseli and Winczner (all named defendants) came to the scene.
17 Plaintiff alleges that these defendants, together with defendant Carlton, forced plaintiff to stand
18 and walk, refused his repeated requests for immediate medical care and/or a wheelchair, and
19 required plaintiff to walk 200-300 feet to the infirmary.

20     6.  Once at the infirmary, plaintiff was seen by a nurse, who took plaintiff's vitals and
21 gave him an ice pack. The unnamed nurse denied plaintiff's requests to see a doctor, or to be sent
22 by ambulance to a hospital for emergency care.

23     7.  Deputy Carlton then escorted plaintiff to booking, placed plaintiff in a holding cell, and
24 completed a Rules Violation Report (RVR), for insubordination, storage of medication, false
25 representation and disruptive behavior. (Id. at 45-6.) Plaintiff alleges that the RVR was "libelous
26 and fraudulent," and completed for the purpose of justifying Carlton's alleged assault. (Id. at 9.)

27     8.  On July 30, 2009, plaintiff submitted a grievance against Deputy Carlton, to Deputy
28 Fichou (named defendant ). (Id. at 13, 47.) The grievance was denied on the same day by

Sergeant Vladesov (named defendant). (Id.) Upon returning the grievance to plaintiff, Deputy Fichou allegedly told plaintiff that Sergeant Vladesov, Captain Malim (another named defendant), and an unnamed Lieutenant (plaintiff attempts to identify this official by badge number (see id. at 2)) all agreed that plaintiff's grievance should be denied. Although plaintiff sought further review, subsequent consideration was apparently denied on September 17, 2009, due to plaintiff's release from jail (and return to CSP-SAC). (Id. at 64.) The letter denying review was signed by Undersheriff Devon Bell, for Sheriff Edward Bonner; both are named defendants in this action.

  9. Meanwhile, on July 27, 2009, plaintiff was seen by physician's assistant (PA) Steve Franks (defendant herein). (Id. at 13.) The next day, on July 28, 2009, plaintiff was seen by defendant Dr. Duncan, who ordered x-rays of plaintiff's lumbar spine. The x-rays were taken with a portable or mobile x-ray machine, operated by Community Mobile Diagnostics, Inc. (CMD) (a defendant herein); the resulting report was signed by Dr. Uyesugi (another named defendant). Plaintiff alleges that the machine malfunctioned, as allegedly demonstrated by Dr. Uyesugi's finding that plaintiff's spine showed "normal alignment."

  10. Plaintiff alleges that, because Dr. Duncan had previously treated plaintiff and therefore was fully aware of plaintiff's history of serious spinal problems, his failure to provide plaintiff with adequate medical care, both for his back and his urinary tract problems (discussed below), demonstrate deliberate indifference to plaintiff's serious medical needs. Moreover, plaintiff asserts, when Dr. Duncan agreed with the findings of Dr. Uyesugi, "he went beyond being deliberately indifferent to my serious medical needs, he became part of a conspiracy to cover up Deputy Carlton assaulting me . . . ." (Id. at 16.)

  11. Plaintiff alleges that, in mid-July 2009, he had also reported to Dr. Duncan "major difficulties voiding [his] bladder." (Id. at 17-18.) Plaintiff alleges that, despite Dr. Duncan's notations of this problem in his treatment notes, and his awareness of plaintiff's past problems with a "neurogenic bladder," he failed to write an order authorizing plaintiff to self-catheterize. Plaintiff states that, as a result, he experienced significant pain and discomfort due to an inability to urinate during the night of July 31, 2009 (through at least August 7, 2009). Plaintiff alleges that, on July 31, 2009, deputies refused plaintiff's requests to "come down [to the infirmary] to

5

catheterize," on the asserted ground that there was no medical authorization. Although such permission was granted the morning and evening of August 1, 2009, plaintiff states that he was miserable the evening of August 1 and morning of August 2, 2009. Plaintiff alleges that his multiple requests for medical attention were denied by Nurse Leiha, as conveyed by Deputy Oliver; both are named defendants herein.

12. On the morning of August 2, 2009, plaintiff modified a spray bottle that was in his cell into a catheter, and self-catheterized until August 4, 2009, "despite showing multiple pill call nurses what I was using as a catheter [and] . . . submit[ting] multiple sick call slips requesting medical attention and the proper medical supplies . . ." Plaintiff alleges that "CMFG Inc.'s medical staff allowed me to keep, and continue using, a nonprescribed unsterile plastic tube for three days to catheterize myself. I told them it was causing me to bleed but they did nothing for me. I now have permanent damage to my urinary tract, prostate, and bladder muscle."

13. Plaintiff states that, on August 4, 2009, he submitted a grievance against CFMG, Dr. Duncan, PA Fransk, Nurse Keiha, and others. Commencing August 4, 2009, plaintiff was allowed to go to the medical clinic four times a day to self-catheterize; however, plaintiff's request to have an additional catheter in his cell was denied. At his last visit to the clinic on August 6, 2009, plaintiff kept the catheter tube. Soon, Deputies Brady and Fisher (both named defendants) came to plaintiff's cell and made him return the tube; they denied plaintiff's repeated requests for medical attention or to provide plaintiff with sterile supplies in his cell. Plaintiff states that "[t]hey told me there was no doctor or physician's assistants at the jail at night." (Id. at 22.)

14. On August 7, 2009, plaintiff was again seen by Dr. Duncan, who directed a nurse to place a "folie, or indwelling, catheter" in plaintiff , noting that plaintiff had experienced urinary retention for the past six days. Although Dr. Duncan told plaintiff that he had written an order for catheterization on July 31, 2009, the order was not included in plaintiff's treatment records. Plaintiff alleges that Dr. Duncan was deliberately indifferent to plaintiff's serious medical needs for failing to provide for plaintiff's catheterization during this period. (Id. at 23.)

////

15. Also on August 7, 2009, Dr. Duncan moved plaintiff to the infirmary. However, within a couple of hours, Deputies Fishuo and Collins informed plaintiff that another RVR had been filed against him, for unauthorized possession of weapons (a pencil sharpener which included a razor), and moved plaintiff to administrative segregation. Allegedly, Deputy Fishuo told plaintiff that, if he withdrew his grievance against Deputy Carlton, this RVR would not be referred to the District Attorney.

16. Plaintiff alleges that, although he was told that no medical personnel were available on the weekends of July 25-26, 2009, August 1-2, 2009, and August 8-9, 2009, Dr. Duncan reportedly came to the jail to observe plaintiff via an observation monitor/camera. (Id. at 24-7.) Dr. Duncan allegedly observed plaintiff and found that he was ambulatory, although plaintiff alleges that custodial staff may have forged the subject progress notes allegedly authored by Dr. Duncan.

17. Plaintiff also names as defendant "Sergeant Carrin (or Carrington)," whom plaintiff states was notified on August 10, 2009, that plaintiff required transportation to an MRI on August 20, 2009. (Id. at 28, 61.)

18. On August 12, 2009, shortly after plaintiff filed a grievance against Captain Malim, plaintiff was transferred back to CSP-SAC. Placer County Nurse Hendricks (defendant herein) prepared and signed a "Confidential Transfer of Medical Information Form," that provided in part: "Chronic low back pain secondary to lumbosacral degenerative disc & spondylolitheses; neurogenic bladder; pt. totally independent with ADL's [activities of daily living]' ambulates with no assistance. . . . may have self catheterization to bladder – intermittent in place of foley catheter. . . ." (Id. at 63.) The form also listed plaintiff's medications, which included methadone, norco and an antibiotic. (Id., see also id. at 29.) Plaintiff contends that Nurse Hendricks should have informed Dr. Duncan of plaintiff's transfer and/or ensured that plaintiff was retained at Placer County Jail under a medical hold, so that he could receive immediate medical attention and an MRI" (allegedly scheduled for August 20, 2009). (Id. at 29-30; see also id. at 31.)

////

19. On October 7, 2009, plaintiff was transported back to Placer County Jail, and appeared in the Superior Court on October 9, 2009.  (Id. at 33.)  Nurse Hendricks prepared another Confidential Transfer of Medical Information, which stated that plaintiff "needs immediate attention"; the form provided that plaintiff had "disc disease L spine; chronic LBP; neurogenic bladder; spondylolisthesis," and that he "may keep own urethral catheter [for] neurogenic bladder," and "may use walker."  (Id. at 68; see also id. at 33.)

20. On October 21 and 22, 2009, plaintiff was transported from CSP-SAC to the California Rehabilitation Center (CRC).  (Id. at 33.)

21. On November 10, 2009, CRC's Dr. Ghaly submitted an urgent request for an MRI of plaintiff's lumbar spine; on February 11, 2010, CRC's Dr. Bui made an urgent request for approval of spine surgery for plaintiff; on February 26, 2010, the consulting surgeon requested surgical authorization; on May 11, 2010, plaintiff lost control of his bladder and required emergency insertion of another foley catheter, and an urgent request for spinal surgery was made; on July 13, 2010, plaintiff had spinal surgery for "L5-S1 Spondylolytic Spondylolisthesis, and L4-5/L5-S1 Herniated Nucleus Pulposus."  (Id. at 68-72 (Surgical Report).)   Plaintiff was informed post-surgically that his spine remained unstable.  (Id. at 34).

22. Plaintiff asserts that he suffers from "severe chronic intractable pain," and "severe depression;" that he requires surgery on his right shoulder, and further surgery on his back; and that he requires surgery to remove the scar tissue on his urinary tract.  (Id. at 39.)

23. Plaintiff's several putative legal claims include the following:  failure to comply with state law; deliberate indifference to serious medical needs; excessive force; filing of false RVRs; failure to properly process plaintiff's administrative grievances; conspiracy to cover up defendant Carlton's alleged use of excessive force against plaintiff; conspiracy to move plaintiff from county jail to state prison to avoid necessary medical expenses.

23. Plaintiff seeks "monetary compensation for my injuries, my future medical expenses, my pain and suffering, [and] my psychological torment and emotional distress."  (Id.)  This includes compensation for loss of consortium due to the alleged damage to his urinary tract and prostate.  In addition, plaintiff alleges that he is unable to return to his prior employment as a

heating and air contractor, and seeks lost past and future earnings, as well as the costs of an education to pursue another career. Plaintiff also seeks punitive damages.

IV. Dismissal of Complaint

As the summary of plaintiff's factual allegations demonstrate, the court has been required to spend an inordinate amount of time identifying a chronology that appears to match the named (and unnamed) defendants with the conduct that plaintiff challenges. The court's effort to construe plaintiff's various legal claims, and to match these claims with each of the various defendants, for the purpose of permitting some claims to survive pursuant to the instant complaint, has proved unmanageable. While some of plaintiff's allegations may state potentially cognizable legal claims, they are overshadowed by the "shotgun" manner in which they are presented. See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1129 (11th Cir. 2001) ("a shotgun complaint leads to a shotgun answer" and "disjointed pleadings make it difficult, if not impossible, to set the boundaries for discovery"); Anderson v. Dist. Bd. of Trustees of Centr. Florida Comm. Coll., 77 F.3d 364, 366-67 (11th Cir. 1996) ("[e]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice"); Smith v. Rainey, 2010 WL 4118096, 16 (M.D. Fla. 2010) ("[w]hatever the merits of the underlying claim(s), [p]laintiff[] risk[s] having them overshadowed by the manner in which these claims are alleged").

The court finds the factual allegations and legal claims in plaintiff's complaint too confounded, vague and conclusory to proceed. The complaint does not contain a short and plain statement, as required by Rule 8(a)(2), Federal Rules of Civil Procedure. Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice to each defendant of the factual allegations against them, and tie these specific factual allegations with each of the elements of each legal claim, stated plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Because plaintiff has failed to comply with the requirements of Rule 8(a)(2), the complaint must be dismissed.

////

The court will, however, grant plaintiff leave to file an amended complaint.

## V. Leave to File Amended Complaint

### A. Leave Granted; Page and Deadline Limitations

Plaintiff is granted leave to file an amended complaint that conforms to the requirements set forth below, within thirty (30) days after service of this order. The amended complaint must be limited to 25 pages, excluding exhibits. This limitation is intended to facilitate plaintiff's articulation of relevant facts and legal claims. Also, plaintiff need not detail the calculation of his alleged monetary damages in his complaint, only assert them. Any exhibits should be clearly and specifically referenced in the complaint, and attached in a meaningful manner.[1]

### B. General Guidelines

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. The charging allegations must be set forth in the amended complaint so that defendants have fair notice of the claims plaintiff is presenting. For each defendant, plaintiff must identify those factual allegations that support each element of each of plaintiff's legal claims against that defendant.

An amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). For example, if plaintiff contends

---

[1] "The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim." Stewart v. Nevada, 2011 WL 588485 (D. Nev. 2011); see also Jacobsen v. Filler, 790 F.2d 1362, 1364-66 (9th Cir. 1986) (the court must remain a "referee" in the adversarial process, and cannot serve as legal counsel for a party, even if that party is a pro se litigant).

he was the victim of a conspiracy, he must identify the participants and allege their agreement to deprive him of a specific federal constitutional right.

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. Fed. R. Civ. P. 8. Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). Plaintiff must not include any preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like. McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). The court (and defendant) should be able to read and understand plaintiff's pleading within minutes. McHenry, 84 F.3d at 1179-80. A long, rambling pleading including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury, or joining a series of unrelated claims against many defendants, very likely will result in delaying the review required by 28 U.S.C. § 1915, and an order dismissing plaintiff's action pursuant to Rule 41, Federal Rules of Civil Procedure, for violation of these instructions.

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 15-220; see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading is superseded.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

////

VI. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. This court's findings and recommendations filed July 26, 2011 (ECF No. 6), are vacated.

2. Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 11), is granted.

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original and one copy of the Amended Complaint.

5. The Amended Complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The Amended Complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

6. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated:  December 6, 2013

/davi1100.14.new

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| MICHAEL S. DAVIS, | No. 2:11-cv-01100-TLN-KJN P |
|---|---|
| Plaintiff, | |
| v. | |
| C. CARLTON, et al., | NOTICE OF SUBMISSION |
| Defendants. | |

Plaintiff hereby submits the following document in compliance with the court's order filed_____.

_____       Amended Complaint

_____       _____
Date                                                                                   Plaintiff

13